UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:24cv60331

OJ COMMERCE, LLC,

          Plaintiff,

-vs-

NATIONAL CHRISTMAS PRODUCTS,
LLC. d/b/a NATIONAL TREE COMPANY,
NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,
NATIONAL TREE INTERMEDIARY, LLC,
NATIONAL TREE HOLDING, LLC,
JOSEPH A. PULEO, SALVATORE PULEO,
JR., and RICHARD PULEO,

          Defendants.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

_____/

Plaintiff OJ Commerce, LLC ("Plaintiff" or "OJC"), by and through undersigned counsel, hereby brings these claims against Defendants National Christmas Products, LLC d/b/a National Tree Company, National Christmas Products, Inc. d/b/a National Tree Company, National Tree Intermediary, LLC, National Tree Holding, LLC, Joseph A. Puelo, Salvatore Puleo, Jr., and Richard Puleo (collectively, "Defendants"), and states and alleges the following:

## INTRODUCTION

The U.S. Supreme Court has repeatedly warned against the dangers of vertical price fixing conspiracies and restraints on trade and their harm to competition. In order to drive up prices and eliminate lower-priced and more efficient retailers, Defendants, a major manufacturer of artificial Christmas tree products, entered into two types of illegal agreements with Amazon, the largest e-commerce retailer in the United States: (1) a price fixing agreement that set artificially-high prices for Defendants' products; and (2) product restraint agreements that

1

precluded non-Amazon retailers from discounting their prices or from carrying products that Amazon was selling.  As a result of those illegal agreements, OJC, an e-commerce retailer, was extensively injured, as were countless consumers who were forced to pay higher prices and had fewer distribution choices for artificial Christmas tree products than if Defendants and Amazon had not illegally colluded.  With this lawsuit, OJC seeks to recover its damages caused by Defendants, and for injunctive relief to put a stop to Defendants' continuing violations of federal and state antitrust laws and harm to competition.

## PARTIES

1.      OJC is a Delaware limited liability company with its principal place of business in Broward County, Florida. OJC's single member resides in Florida. OJC is an online retailer engaged in interstate commerce and selling consumer goods to customers.

2.      Upon information and belief, National Christmas Products, LLC d/b/a National Tree Company is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of New Jersey.

3.      Upon information and belief, National Christmas Products, LLC is wholly owned by National Tree Intermediary, LLC.

4.      Upon information and belief, National Tree Intermediary, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of New Jersey.

5.      Upon information and belief, National Tree Intermediary, LLC is wholly owned by National Tree Holding, LLC.

6.      Upon information and belief, National Tree Holding, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of New Jersey.

7.      Upon information and belief, National Christmas Products, Inc. d/b/a National Tree Company was a corporation organized under the laws of the State of New Jersey with its principal place of business in the State of New Jersey.

8.      Upon information and belief, National Christmas Products, Inc. was dissolved but under N.J.S.A. 14A:12-9(2)(e), the corporation may sue and be sued in its corporate name and process may issue against the corporation in the same manner as if dissolution had not occurred.

9.      Upon information and belief, Joseph Puleo is a citizen of the State of New Jersey, was an officer and/or director of National Christmas Products, Inc., is an officer and/or director of National Christmas Products, LLC, and is a member of National Tree Holding, LLC.

10.      Upon information and belief, Salvatore Puleo is a citizen of the State of New Jersey, was an officer and/or director of National Christmas Products, Inc., is an officer and/or director of National Christmas Products, LLC, and is a member of National Tree Holding, LLC.

11.      Upon information and belief, Richard Puleo is a citizen of the State of New Jersey, was an officer and/or director of National Christmas Products, Inc., is an officer and/or director of National Christmas Products, LLC, and is a member of National Tree Holding, LLC.

12.      Upon information and belief, Joseph A. Puleo, Salvatore Puleo, Jr., and Richard Puleo continued to do and carry on business as National Christmas Products, Inc. after its dissolution, and therefore are personally liable as general partners.  This is shown by the general partners of "National Christmas Products, Inc." issuing invoices and account statements, receiving payments, and otherwise continuing to use that corporate name in the manufacturing

3

and sale of artificial Christmas tree products and related communications and business activities long after the entity was allegedly dissolved.

## JURISDICTION

13.     This Court has subject matter jurisdiction over OJC's claims pursuant to 28 U.S.C. §§ 1331 and 1337(a), under federal question jurisdiction, as OJC's claims arise under the antitrust laws of the United States.

14.     This Court also has supplemental jurisdiction over OJC's state claims, pursuant to 28 U.S.C § 1367(a) as they are so related to OJC's federal antitrust claims in the action within such original jurisdiction that they form part of the same case or controversy as OJC's federal claims.

15.     This Court has personal jurisdiction over Defendants because, *inter alia*, each of them (a) transacted business within this District, (b) sold products including artificial Christmas tree products throughout this District, (c) has substantial contacts in this District, including by having an agreement with OJC which contained a mandatory forum selection clause in this District, and by National Christmas Products, Inc. filing and prosecuting a lawsuit in this District, and (d) was engaged in an unlawful restraint of trade that injured persons, including OJC, residing in, located in, or doing business throughout the United States, including this District.

16.     Defendants engaged in conduct inside the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States, including in this District. The activities of Defendants were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of

the United States. Defendants' products and services are sold in the flow of interstate commerce, including into this District.

17.     This Court has also personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193, as each operated, conducted, engaged in, and carried on a business venture in this state; committed a tortious act within this state; and is engaged in substantial and not isolated activity within this state, including by National Christmas Products, Inc. filing and prosecuting a lawsuit in this District.

18.     Venue is proper in this District pursuant to 15 U.S.C. §22 and 28 U.S.C. §1391(b)-(d), because a substantial part of the events giving rise to OJC's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed herein has been carried out in this District, and one or more of the Defendants is licensed to do business in, is doing business in, had agents in, or transacts business in, this District.

## FACTS COMMON TO ALL COUNTS

19.     Vertical price restraints between manufacturers and retailers – like at issue in this case – have been an antitrust concern to the U.S. Supreme Court for decades.  In *Leegin Creative Leather Products v. PSKS, Inc.*, the Supreme Court warned that "the potential anticompetitive consequences of vertical price restraints must not be ignored or underestimated."[1] The Court emphasized that there is a significant "likelihood that the restraint facilitates" anticompetitive purposes when a dominant retailer from a manufacturer "request[s] resale price maintenance to forestall innovation in distribution that decreases costs."[2] In particular, the Court warned that a dominant retailer could collude with a manufacturer into adopting minimum retail prices and "if the manufacturer believes it needs access to the retailer's distribution network," it may

---

[1] 551 U.S. 877, 893 (2007).
[2] *Id.*

"accommodate the retailer's demands for vertical price restraints."[3]  In that situation, "the manufacturer does not establish the practice to stimulate services or to promote its brand"--procompetitive purposes-- but rather to give an "inefficient retailer higher profits," while "[r]etailers with better distribution systems and lower cost structures would be prevented from charging lower prices."[4]

20.     As to this specific case, Defendants and OJC had a business relationship where OJC sold Defendants' artificial Christmas tree products to OJC's customers.

21.     Unbeknownst to OJC at the time, Defendants had a vertical price fixing agreement - specifically, an anticompetitive minimum margin agreement ("MMA") – with Amazon.com, Inc. ("Amazon") during at least March 2020 and continuing thereafter, which fixed the prices that Defendants would charge to e-commerce retailers other than Amazon, including OJC.

22.     Also unbeknownst to OJC, Defendants also had a vertical agreement with Amazon in restraint of trade that precluded non-Amazon retailers, including OJC, from discounting their prices or from carrying products that Amazon was selling and that OJC could not sell certain products because only Amazon could sell them (collectively, "product restraint agreements").

23.     These contracts are particularly troubling because it is widely known that Amazon is by far the largest e-commerce retailer in the United States, and has been for years.[5]

---

[3] *Id.* at 893-94 and 897-98.

[4] *Id.*

[5] *See, e.g.,*
https://www.statista.com/statistics/245340/leading-large-cap-e-commerce-companies-market-cap/; https://www.similarweb.com/blog/sales/selling-to-ecommerce/top-ecommerce-companies/; https://www.statista.com/forecasts/646030/united-states-top-online-stores-united-states-ecommercedb.

24.     Amazon's market share related to its online retail marketplace is estimated to be as high as 90% of all U.S. online marketplace sales.[6]

25.     For many U.S. consumers, online shopping is virtually synonymous with Amazon.  Before making a purchase, 82% of consumers check prices from Amazon, 79% check Amazon's reviews, and 74% of U.S. consumers go directly to Amazon when they are ready to purchase a specific product.[7]   Amazon's market share in e-commerce makes it *the* dominant online retailer in the United States.

26.     Accordingly, the Supreme Court's concerns about vertical price restraints are precisely encapsulated by Defendants' MMA with Amazon, which Defendants use to prevent other online retailers, such as OJC, from offering the same artificial Christmas tree products Amazon sells at lower prices. They violate Section 1 of the Sherman Act's prohibition against price-fixing by setting a de facto minimum retail price for the products under the agreement, as well as related state statutes. By restraining competition from Amazon's online retail rivals, these agreements injure consumers and competition by artificially raising online retail prices for Defendants' artificial Christmas tree products sold by different retailers, like OJC. This conduct is a naked restraint under the Sherman Act, New Jersey Antitrust Act, and Florida Antitrust Act, and constitutes a per se violation of the (California) Cartwright Act and the Maryland Antitrust Act..

27.     Under the MMA, Defendants guaranteed both that Amazon was able to price the Defendants' artificial Christmas tree products competitively against other online competition, including OJC, at least 95% of the time and that Amazon will receive a minimum margin on

---

[6] *Amazon Marketplace is 25% of US E-Commerce*, Marketplace Pulse (Feb. 1, 2022), https://www.marketplacepulse.com/articles/amazon-marketplace-is-25-of-us-e-commerce.
[7] *See, e.g.,* The 2019 Amazon Consumer Behavior Report, https://fv.feedvisor.com/re/656-BMZ-780/images/Feedvisor-Consumer-Survey-2019.pdf at 14-15.

each sale regardless of the actual price that Amazon sells the product at retail. Amazon enforces this agreement by requiring Defendants to compensate it monthly for any lost margins necessitated by lowering its retail price to match a competitor.

28.     Defendants also enforced their MMA and product restraint agreements with Amazon by cutting off competing retailers, including OJC, who "violated" the Amazon / Defendants arrangements.

29.     So instead of Amazon risking its own profit margins to compete with its retail rivals on price, Amazon contractually colluded with Defendants to suppress retail competition. This collusion means that Defendants adopt a de facto minimum retail price (or floor price) for their artificial Christmas tree products market-wide. That floor price is the combined sum of the supplier's wholesale price and its minimum margin guarantee. By requiring Defendants to compensate Amazon whenever their Christmas products sell below the agreed floor price, the MMA agreements fixed prices and suppressed competitive pricing from Amazon's rivals, including OJC.

30.     The MMA and product restraint agreements were implemented to accommodate Amazon, not as a means of promoting Defendants' artificial Chirtsmas tree products or fostering price competition in the marketplace. In a competitive market, Defendants would benefit by rotating price promotions with different retailers to ensure a broad range of distribution options. But instead, pricing and price promotions revolve solely around Amazon and its relationship with Defendants.

31.     By Defendants agreeing with Amazon to pay for its lost margins and enforcing the MMA and product restraint agreements against OJC, Defendants and Amazon ensured that pricing undercutting Amazon was discontinued.

32.     In a competitive market, online retailers would compete for consumer loyalty by offering the best price and product selection. But Defendants / Amazon's MMA and product restraint agreements precluded that head-to-head competition. Because Amazon could match OJC's prices without risking Amazon's own loss of revenue and sell products that no other retailers could, OJC's ability to undercut Amazon's pricing or otherwise compete with Amazon was prevented because OJC faced being cut off from inventory and sales by Defendants. Thus, discounting could not be done by OJC for the benefit of the consumer because Defendants' illegal agreements with Amazon.

33.     OJC did not find out about the MMA or the product restraint agreements between Defendants and Amazon until October 2023, during discovery in Case No.: 22-cv-60897-WPD, *National Christmas Products, Inc. d/b/a National Tree Company v. OJ Commerce, LLC* (S.D. Fla.).

34.     Indeed, Defendants' illegal agreements were first discovered after National Christmas Products, Inc. produced Exhibits B-D to this Complaint on or about September 22, 2023 coupled with OJC taking the deposition under oath of Defendant Richard Puleo of Defendants on October 6, 2023, as well as other depositions taken in the Fourth Quarter of 2023. A true and correct copy of a portion of Richard Puleo's deposition is attached hereto and incorporated herein as **Exhibit A**.

35.     In that deposition, Richard Puleo testified Defendants internally agreed that they would quit doing price promotions with OJC because of Defendants' agreement with Amazon that no other retailers could undercut the pricing agreed to in the MMA and the product restraint agreements. That conversation was memorialized in Defendants' internal email chain, from March 2020, a true and correct of which is attached hereto and incorporated herein as **Exhibit B**.

36.     In that email chain, Richard and Joseph Puleo of Defendants internally confirmed that, "[b]ased on our discussion about Amazon pricing last week," Defendants were going to "back off on promotions we do with OJ Commerce."

37.     Additionally, Richard Puleo stated on March 17, 2020 that OJC would only ever be allowed to discount "items that Amazon didn't sell many of and are not on Amazon's" order for the following season.  (Ex. B.)

38.     Salvadore Puleo also agreed in a related email chain that Defendants should cut off OJC from pricing promotions with OJC, "and maybe other customers too."   A true and correct copy of that email chain is attached hereto and incorporated herein as **Exhibit C**.

39.     Richard Puleo testified that Salvadore Puleo "[wa]s saying we get to [back off promotions for] the other customers too, of course" due to Amazon's complaints about the violations of the MMA and product restraint agreements.

40.     Richard Puleo also testified in his deposition that Defendants enforced their price fixing agreements with Amazon against other retailers, including OJC, to avoid violating its agreement and "get[ting] into trouble" with Amazon.

41.     In fact, another email showed that Defendants had enforced their price fixing agreements with Amazon against OJC in April 7-15, 2020.  A true and correct copy of that email chain is attached hereto and incorporated herein as **Exhibit D**.  In that chain, OrcaPacific, an agent for Amazon, notified Defendants of the purported "violators" of the MMA, so that Defendants knew "which items need to be turned off and which seller/retailer is in violation." OrcaPacific specifically singled out OJC to Defendants for punishment, stating that "OJ Commerce had an additional 168 violations" of the MMA.

42.     Because of the MMA and product restraint agreements between Defendants and Amazon, OJC was cut off from selling Defendants' artificial Christmas tree products and from selling them at lower prices than allowed by the illegal contracts.  OJC's customers were thereby forced to pay more for Defendants' artificial Christmas tree products than they would have if Defendants (and Amazon) had not unreasonably restrained competition in the price of artificial Christmas tree products subject to the illegal agreements.

43.     OJC was totally unaware of Defendants' illegal agreements with Amazon – as they were concealed from OJC during its business relationship with Defendants – until September - October 2023, when Defendants' internal emails and deposition testimony were produced and uncovered in the related litigation Case No.: 22-cv-60897-WPD, *National Christmas Products, Inc. d/b/a National Tree Company v. OJ Commerce, LLC* (S.D. Fla.).

44.     Before then, OJC had no way of knowing or even suspecting that Defendants had made anticompetitive agreements with Amazon because the proof of those agreements was solely within the possession of Defendants.

45.     Upon information and belief, Defendants' violations of federal and state antitrust laws has been and is continuing since at least March 2020 to the present day.

46.     Defendants therefore caused OJC to suffer damages in the form of lost profits from lost sales, in addition to other actual damages.

47.     OJC has standing therefore as a retailer of artificial Christmas tree products that were inflated by Defendants' anticompetitive vertical restraints of trade with Amazon.

48.     The actual harm to OJC is a cognizable antitrust injury directly caused by Defendants' violations of federal and state antitrust laws, including their anticompetitive agreements with Amazon, as alleged herein.

## COUNT I – VIOLATION OF 15 U.S.C. § 1

49.     OJC incorporates by reference paragraphs 1 through 48.

50.     This action arises out of a violation of § 1 of the Sherman Antitrust Act (15 U.S.C. § *et seq*) for a conspiracy in restraint of trade and commerce, committed by Defendants.

51.     Defendants are major manufacturers, distributors, and partners concerning those activities of artificial Christmas tree products, who sell their products to online retailers across the United States, including in this District.

52.     The relevant market for Defendants' products is online sales in the artificial Christmas tree product category, within the geographic scope of the United States (the "Market").

53.     Amazon is a completely separate and independent party from Defendants and is the largest e-commerce retailer within the relevant Market.

54.     Amazon has enormous market power in the e-commerce, online retailer market, and has established a dominant position in the Market, including in this District, for many years.

55.     Amazon also completely and solely controls the Amazon Marketplace on which OJC, and thousands of other online retainers, offer products for sale, including artificial Christmas tree products.

56.     During at least March 2020 to at least 2022, Defendants sold their artificial Christmas tree products to Amazon, OJC, and other online retailers.

57.     Upon information and belief, Defendants continue to sell their artificial Christmas tree products to Amazon and other online retailers to the present day.

58.     As described above, Defendants entered into an MMA with Amazon to restrain trade through the fixing of prices related to the sale of Defendants' artificial Christmas tree products.

59.     As further described above, Defendants entered into product restraint agreements with Amazon to restrain trade through restricting pricing promotions and product availability in favor to Amazon and to the detriment of OJC and consumers, related to the sale of Defendants' artificial Christmas tree products.

60.     The MMA and product restraint agreements imposed by Defendants contained prices that were well above the prices previously offered by OJC, and other retailers, on e-commerce platforms, including but not limited to the Amazon Marketplace.

61.     As set forth above, the MMA and product restraint agreements imposed a minimum pricing policy on its artificial Christmas tree products on all online retailers, including OJC, preventing any of them from undercutting Amazon, even if they could do so profitably. They also prevented discounting and limited sources for product choice for consumers.

62.     The MMA and product restraint agreements were therefore concerted actions between two separate and independent entities within the Market, which led to significant harm to competition, as described herein.

63.     OJC's business is based upon being an aggressive discounter, wherein the company determines the lowest online price for products and then either meet or beat those prices.   OJC's discounting benefits the consumer by driving prices lower and increasing competition between retailers.   It also benefits OJC by higher sales volumes.   But with the price fixing and product restraint agreements between Defendants and Amazon, OJC was precluded

from setting its own retail prices for the goods it sells and offering a full line of products, thereby resulting in the lowering of sales for OJC and the rise in prices for consumers.

64.     Defendants' agreements with Amazon dictated the retail price to the consumers, led to artificial price increases to consumers and pushed smaller retailers, including OJC, out of the Market, materially reducing consumers' range of choices or options, and letting Amazon and Defendants' function in a cartel-like way to control pricing. It therefore was an unlawful agreement in restraint of trade in violation of the Sherman Act and the state statutes cited herein.

65.     Defendants accordingly entered into vertical agreements in restraint of trade with Amazon, as Amazon and Defendants are both manufacturers and distributors, and Amazon was and is also an e-commerce retailer.

66.     Defendants' agreements with Amazon allowed Amazon to keep retail prices high and reduce source options, harming competition and consumers.

67.     Defendants' agreements with Amazon prevented more efficient retailers, such as OJC, from selling Defendants' artificial Christmas tree products at a lower price, and forestalled innovation for OJC and other online retailers that could sell and provide the same quality of service to the consumer at a price well below the artificial minimum and distribution limitations set by Defendants.

68.     As a result of these artificially-inflated price increases imposed by Defendants and Amazon, the consumers within the Market, as well as consumers that are residents of this District, were harmed by having to pay significantly more for artificial Christmas tree products manufactured by Defendants and sold by the largest e-commerce retailer in the Market.

69.     Defendants' and Amazon's agreements had a manifestly anticompetitive effect on the Market and thereby harmed competition through the price increases to artificial Christmas

tree products that were suffered by consumers and by forestalling innovation and customer service to consumers within the relevant Market.

70.     Indeed, neither OJC nor the consumers of Defendants' artificial Christmas tree products benefited from the MMA or product restraint agreements that artificially-inflated the price for Defendants' products and limited source options.  To the contrary, OJC lost sales and profits and the consumer was forced to pay higher prices due to the anticompetitive effects of the MMA and product restraint agreements with no countervailing pro-competitive benefit to OJC, consumers, or competition.

71.     Defendants' agreements with Amazon were done with the unlawful intent, purpose and effect of:

a.      artificially suppressing price competition between retail companies selling Defendants' products, and to remove competitive pricing pressure from artificial Christmas tree products within the Market;

b.      eliminating competition between more efficient retailers, such as OJC, and the retail cartel Amazon; and

c.      restraining OJC's ability to effectively compete in the Market by preventing OJC from selling below the artificial high price imposed by Defendants and Amazon, and from offering products that only Amazon could sell at artificially-high prices.

72.     As a result of Defendants' agreements with Amazon, OJC incurred monetary harm, in the form of lost sales, lost profits, and overcharges.

WHEREFORE, OJC demands:

a.      Damages, including compensatory damages, incidental damages, and consequential damages;

b.      Treble damages pursuant to 15 U.S.C. § 15(a);

c.      Reasonable attorney's fees pursuant to 15 U.S.C. §§ 15(a) and 26;

d.      Injunctive relief, in the form of a declaration that Defendants' illegal agreements with Amazon was a violation of the SHERMAN ANTITRUST ACT, pursuant to 15 U.S.C. § 26;

e.      cost of this litigation, pursuant to 15 U.S.C. §§ 15(a) and 26;

f.      pre- and post-judgment interest; and

g.      any other relief this Court finds just and proper.

## COUNT II - VIOLATIONS OF THE NEW JERSEY ANTITRUST ACT - § 56:9

73.     OJC incorporates by reference paragraphs 1 through 72.

74.     This action arises out of a violation of N.J.S.A. § 56:9 for a conspiracy in restraint of trade and commerce, committed by Defendants, as defined by § 1 of the Sherman Antitrust Act.

75.     OJC offered for sale and sold Defendants' artificial Christmas tree products in the State of New Jersey, and Defendants' principal place of business was and is in New Jersey, and therefore the anticompetitive effects of the MMA and product restraint agreements were felt and incurred by OJC and its customers in New Jersey.

76.     Accordingly, OJC has standing under the New Jersey Antitrust Act to bring this claim against Defendants.

77.     As a result of Defendants' illegal agreements with Amazon, OJC incurred monetary harm, in the form of lost sales, lost profits, and overcharges.

WHEREFORE, OJC demands:

a.      Damages, including compensatory damages, incidental damages, and consequential damages;

b.      Treble damages pursuant to N.J.S.A. § 56:9-12(a);

c.      Reasonable attorney's fees pursuant to N.J.S.A. § 56:9-10(b);

d.      Injunctive relief, in the form of a declaration that Defendants' illegal agreements with Amazon was a violation of the NEW JERSEY ANTITRUST ACT, pursuant to N.J.S.A. § 56:9-10;

e.      cost of this litigation, pursuant to N.J.S.A. § 56:9-10(b);

f.      pre- and post-judgment interest; and

g.      any other relief this Court finds just and proper.

## COUNT III - VIOLATIONS OF THE FLORIDA ANTITRUST ACT - § 542.18

78.     OJC incorporates by reference paragraphs 1 through 77.

79.     This action arises out of a violation of § 542.18 of the Florida Antitrust Act (Chapter 542 *et seq*) for a conspiracy in restraint of trade and commerce, committed by Defendants.

80.     OJC offered for sale and sold Defendants' artificial Christmas tree products in the State of Florida, OJC's principal place of business is in the State of Florida, and therefore the anticompetitive effects of the MMA and product restraint agreements were felt and incurred by OJC and its customers in Florida.

81.     Accordingly, OJC has standing under the Florida Antitrust Act to bring this claim against Defendants.

82.     As a result of Defendants' illegal agreement with Amazon, OJC incurred monetary harm, in the form of lost sales, lost profits, and overcharges.

WHEREFORE, OJC demands:

a.      Damages, including compensatory damages, incidental damages, and consequential damages;

b.      Treble damages pursuant to Fla. Stat. § 542.22(a);

c.      Reasonable attorney's fees pursuant to Fla. Stat. §§ 542.22(a) and 542.23;

d.      Injunctive relief, in the form of a declaration that Defendants' illegal agreement with Amazon was a violation of the FLORIDA ANTITRUST ACT, pursuant to Fla. Stat. § 542.23;

e.      cost of this litigation, pursuant to Fla. Stat. §§ 542.22(a) and 542.23;

f.      pre- and post-judgment interest; and

g.      any other relief this Court finds just and proper.


**COUNT IV - VIOLATIONS OF CALIFORNIA CARTWRIGHT ACT - § 16700**

83.     OJC incorporates by reference paragraphs 1 through 82.

84.     This action arises out of a violation of California's Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq.* for a conspiracy in restraint of trade and commerce, committed by Defendants.

85.     A trust in California is any combination intended for various purposes, including but not limited to creating or carrying out restrictions in trade or commerce, increasing the price of merchandise, or preventing competition in the market for a commodity.  Cal. Bus. & Prof. Code § 16720.

86.     Through their MMA and product restraint agreements with Amazon, Defendants entered into illegal trusts.   These agreements establish a floor price based on the sum of Defendants' wholesale price to Amazon along with the minimum margin they guarantee to Amazon, and restrictions on discounting and product availability. By these agreements, Defendants have ensured that they will enforce a minimum resale price and exclusivity to Amazon to prevent OJC, and others, from competing with Amazon, causing OJC damages.

87.     Every trust to restrain trade in California is per se unlawful, unless an exception is provided under Code § 16726.  No exceptions apply to Defendants' conduct.

88.     OJC offered for sale and sold Defendants' artificial Christmas tree products in the State of California, and therefore the anticompetitive effects of the MMA and product restraint agreements were felt and incurred by OJC and its customers in California.

89.     Accordingly, OJC has standing under the Cartwright Act to bring this claim against Defendants.

90.     As a result of Defendants' illegal agreement with Amazon, OJC incurred monetary harm, in the form of lost sales, lost profits, and overcharges.

WHEREFORE, OJC demands:

a.     Damages, including compensatory damages, incidental damages, and consequential damages;

b.     Treble damages pursuant to Cal. Bus. & Prof. Code § 16720(a);

c.     Reasonable attorney's fees pursuant to Cal. Bus. & Prof. Code § 16720(a);

d.     Injunctive relief, in the form of a declaration that Defendants' illegal agreement with Amazon was a violation of the CARTWRIGHT ACT, pursuant to Cal. Bus. & Prof. Code § 16720(a);

e.      cost of this litigation, pursuant to Cal. Bus. & Prof. Code § 16720(a);

f.      pre- and post-judgment interest pursuant to Cal. Bus. & Prof. Code § 16761; and

g.      any other relief this Court finds just and proper.


## COUNT V - VIOLATIONS OF MARYLAND ANTITRUST ACT - § 11-201

91.     OJC incorporates by reference paragraphs 1 through 90.

92.     This action arises out of a violation of the Maryland Antitrust Act, Md. Code Ann., Com. Law § 11-201, *et seq.* for a conspiracy in restraint of trade and commerce, committed by Defendants.

93.     Under the Maryland Antitrust Act, a "contract, combination or conspiracy that establishes a minimum price below which a retailer, wholesaler, or distributor may not sell a commodity" is a per se violation of the Maryland antitrust law.  Md. Code Ann., Com. Law § 11-204(b).

94.     Through their MMA and product restraint agreements with Amazon, Defendants entered into illegal agreements.  These agreements establish a floor price based on the sum of Defendants' wholesale price to Amazon along with the minimum margin they guarantee to Amazon, and restrictions on discounting and product availability.  By these agreements, Defendants have ensured that they will enforce a minimum resale price and exclusivity to Amazon to prevent OJC, and others, from competing with Amazon, causing OJC damages.

95.     Defendants have engaged in a contract, combination, or conspiracy with its co-conspirator, Amazon, that "unreasonably restrain[s] trade or commerce," and establishes a minimum price below which a retailer, wholesaler, or distributor may not sell a commodity," in violation of Md. Code Ann., Com. Law § 11-204(a)(1) and (b).

96.     OJC offered for sale and sold Defendants' artificial Christmas tree products in the State of Maryland, and therefore the anticompetitive effects of the MMA and product restraint agreements were felt and incurred by OJC and its customers in Maryland.

97.     Accordingly, OJC has standing under the Maryland Antitrust Act to bring this claim against Defendants.  Md. Code Ann., Com. Law § 11-209(b)(2)(i).

98.     As a result of Defendants' illegal agreement with Amazon, OJC incurred monetary harm, in the form of lost sales, lost profits, and overcharges.

WHEREFORE, OJC demands:

a.     Damages, including compensatory damages, incidental damages, and consequential damages;

b.     Treble damages pursuant to Md. Code Ann., Com. Law § 11-209(b)(4);

c.     Reasonable attorney's fees pursuant to Md. Code Ann., Com. Law § 11-209(b)(4);

d.     Injunctive relief, in the form of a declaration that Defendants' illegal agreement with Amazon was a violation of the MARYLAND ANTITRUST ACT, pursuant to Md. Code Ann., Com. Law § 11-209(b)(3);

e.     cost of this litigation, pursuant to Md. Code Ann., Com. Law § 11-209(b)(4);

f.     pre- and post-judgment interest; and

g.     any other relief this Court finds just and proper.

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38,
OJC DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**PRAYER FOR RELIEF**

WHEREFORE, OJC respectfully demands the following relief:

a.     Judgment against Defendants on all of OJC's claims;

b. Judgment against Defendants for damages in the amount to be determined at trial;

c. Judgment against Defendants for treble damages in an amount to be determined at trial;

d. Award of OJC's attorneys' fees and costs, pursuant to 15 U.S.C. §§ 15(a) and 26, N.J.S.A. § 56:9-10(b), Fla. Stat. §§ 542.22(a) and 542.23, Cal. Bus. & Prof. Code § 16720(a), and Md. Code Ann., Com. Law § 11-209(b)(4);

e. OJC's costs incurred in obtaining judgment against Defendants;

f. Pre- and post-judgment interest; and

g. Such other relief as the Court considers just and proper.

Dated: February 27, 2024

Respectfully Submitted,
Shlomo Y. Hecht, P.A.
4538 NW 85th Ave.
Coral Springs, FL 33065
Phone: 954-861-0025

By: /s/ Shlomo Y Hecht
Florida State Bar No.: 127144
Email: sam@hechtlawpa.com
*Attorney for OJ Commerce, LLC*