UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-60331-CIV-WPD

OJ COMMERCE, LLC,

    Plaintiff,

v.

NATIONAL CHRISTMAS PRODUCTS, LLC
d/b/a NATIONAL TREE COMPANY,
NATIONAL TREE INTERMEDIARY, LLC,
NATIONAL TREE HOLDING, LLC, JOSEPH A
PULEO, SALVATORE PULEO, JR., and
RICHARD PULEO,

    Defendants.

_____

## ORDER DISMISSING SECOND AMENDED COMPLAINT WITH PREJUDICE

THIS CAUSE is before the Court upon Defendant National Christmas Products, LLC d/b/a/ National Tree Company ("NCP, LLC")[1], National Tree Intermediary, LLC ("Intermediary"), National Tree Holding, LLC ("Holding"), Joseph A. Puleo, Salvatore Puleo, Jr., and Richard Puleo ("Individual Defendants")'s Motion to Dismiss the Second Amended Complaint filed herein on February 20, 2025. [DE 68]. The Court has carefully considered the Motion [DE 68], Plaintiff OJ Commerce, LLC's Response in Opposition, filed March 27, 2025, [DE 69], Defendants' Reply, filed April 3, 2025, [DE 70], and is otherwise fully advised in the premises.

---

[1] The Court construes any allegations or references to National Christmas Products, Inc. as alleged against National Christmas Products, LLC. National Christmas Products, Inc. no longer exists and was fully merged into National Christmas Products, LLC.

1

I.      INTRODUCTION

The Court assumes the reader's knowledge of this Court's previous orders dismissing the first two complaints. [DE 42, 61]. To summarize the Court's holdings:

On September 30, 2024, this Court granted Defendants' motion to dismiss the original Complaint on the grounds that (1) Plaintiff did not sufficiently allege an unreasonable restraint on trade; (2) in the alternative, the Court lacked personal jurisdiction over the defendants, and (3) the Court declined to exercise supplemental jurisdiction over Plaintiff's state antitrust claims. The Court also found that Plaintiff had antitrust standing, based in part on Defendants' failure to sufficiently argue the issue. *See* [DE 42].

On February 7, 2025, this Court granted Defendants' second motion to dismiss the First Amended Complaint on the grounds that (1) Plaintiff again failed to allege personal jurisdiction as against the Individual Defendants, Holding, and Intermediary;[2] (2) as to Defendant National Christmas Products, LLC, Plaintiff failed to state a viable Sherman Act claim because Plaintiff did not allege that Defendants' actions raised market prices above competitive levels, and (3) the Court declined to exercise supplemental jurisdiction over Plaintiff's state antitrust claims. *See* [DE 61].

This latest iteration of the complaint, the Second Amended Complaint ("SAC") [DE 62], while improved, ultimately fares no better than the previous two. Plaintiff still does not sufficiently allege personal jurisdiction against the Individual Defendants, Intermediary and Holding. Nor does Plaintiff state a Section One claim against National Christmas Products, LLC. The Court once again declines to exercise supplemental jurisdiction over the state law claims. Thus, based upon the reasoning below, the Court grants Defendants' motion to dismiss—this time, with prejudice.

---

[2] In their second motion to dismiss, Defendants dropped their argument that the Court lacked personal jurisdiction over National Christmas Products, LLC. *See* [DE 57] at p. 5.

## II. BACKGROUND

According to the allegations in the Second Amended Complaint: Plaintiff, OJ Commerce, LLC ("Plaintiff" or "OJC") is an online retailer of artificial Christmas tree products. SAC ¶ 1. Defendant NCP, LLC is a manufacturer of artificial Christmas tree products. SAC ¶ 20, 38. Defendant Intermediary is the parent company and owner of NCP, LLC. SAC ¶ 3. Defendant Holding is the parent company and owner of Intermediary. SAC ¶ 4. Defendants Joseph A. Puleo, Salvatore Puleo, Jr., and Richard Puleo are officers of National Christmas Products, Inc., which merged into Defendant NCP, LLC. SAC ¶¶ 7–9.

*A. The First Action*

This instant action follows a previous action, *National Christmas Products, Inc. d/b/a National Tree Company v. OJ Commerce, LLC*, Case No. 0:22-cv-60897-WPD ("First Action").[3] In the First Action, NCP, LLC sought damages from OJC for breach of contract, account stated, and goods sold and delivered. [First Action, DE 1, 14]. OJC filed counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing, breach of implied warranty, tortious interference with business relationship, fraud and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See* [First Action, DE 24 and DE 44]. The parties engaged in extensive discovery, including at least eleven depositions, multiple discovery conferences before Magistrate Judge Jared M. Strauss, and tens of thousands of pages of electronic and paper discovery. *See generally* [First Action, DE 36, 54, 58, 68, 82]. About a year into the discovery process, NCP, LLC moved to dismiss for lack of subject matter jurisdiction upon learning that National Christmas Products, LLC was its true corporate identity (rather than National Christmas Products, Inc.) and that one of its members was a citizen of Florida. [First Action, DE 95]. OJC then expedited

---

[3] The Court takes judicial notice of all docket entries in *National Christmas Products, Inc. d/b/a National Tree Company v. OJ Commerce, LLC*, Case No. 0:22-cv-60897-WPD.

discovery on subject matter jurisdiction, and Magistrate Judge Strauss stayed the action pending jurisdictional discovery. [First Action, DE 96-106]. On May 7, 2024, Magistrate Judge Strauss issued a Report recommending granting the motion to dismiss for lack of subject matter jurisdiction. [First Action, DE 135]. On June 6, 2024, this Court approved Magistrate Judge Strauss' report and recommendation and dismissed the First Action without prejudice, over OJC's objection. [First Action, DE 138].

B. *The Instant Action*

On February 27, 2024, while jurisdictional discovery in the First Action was ongoing, Plaintiff OJ Commerce brought this instant action against Defendants based on claims arising under Federal and State antitrust law.

According to Plaintiff's allegations for all counts: Plaintiff had a wholesaler-retailer relationship with Defendants. SAC ¶ 36. The relevant market for Defendants' products is online sales in the artificial Christmas tree product category, within the geographic scope of the United States (the "Market"). SAC ¶ 37. During at least March 2020 and continuing thereafter, all named Defendants are party to a vertical price fixing agreement, specifically an anticompetitive minimum margin agreement with Amazon, which fixed the prices that Defendants would charge to online retailers other than Amazon, including OJC. SAC ¶ 39. Defendants also had a vertical agreement with Amazon that precluded non-Amazon retailers, including OJC, from discounting their prices or from carrying products that Amazon was selling. SAC ¶ 40. The "illegal agreements allowed Amazon to raise the prices for artificial Christmas tree products in the Market overall, because Defendants were the dominant manufacturer and Amazon was the dominant online retailer." SAC ¶ 50. Defendants agreed with Amazon to "pay for its lost margins and enforcing the [minimum margin agreements] and product restraint agreements against OJC." SAC ¶ 57. As a result of these

agreements between Defendants and Amazon, "OJC was unable to compete, which permitted Amazon to raise prices to U.S. consumers." SAC ¶ 58. OJC "calculated" that in and after March 2020, after the product restraint agreements were entered into, the prices to consumers for artificial Christmas tree products in the Market substantially increased above competitive levels by "double digits." SAC ¶ 78. In addition to the anticompetitive, double-digit increase in prices across the entire Market, the top-selling artificial Christmas tree products throughout the Market increased by more than 15%. SAC ¶ 79. The alleged agreements also "prevented OJC's ability to undercut Amazon's pricing or otherwise provide discounts for the benefit of the consumer because OJC faced being cut off from inventory and sales by Defendant." SAC ¶ 58.

In support of these allegations, Plaintiff cites to discovery material from the First Action.[4] Exhibit C [62–3] includes excerpts from a Richard Puleo's Deposition taken on October 6, 2023, which states in part:

> Q Okay. So, Amazon -- let us go back to the conversations that you had with Amazon around that period. So, Amazon was complaining about other dropshippers undercutting the price. Was that a one-time complaint that Amazon made or is that like a repeated complaint that they kept launching?
>
> A I do not remember.
>
> Q Okay. But you definitely remember Amazon complaining about these issues with other retailers?
>
> A Yes.
>
> Q Okay. And what was your response to Amazon like, what were you going to do about it?
>
> A We told him we would address the problem.
>
> Q You told him you were going to address the problem?
>
> A Yes.

---

[4] The Court can consider attachments to the amended complaint, which are part of the pleading "for all purposes." Fed. R. Civ. P. 10(c).

> Q And how were you and how were you going to address the problems?
>
> A By enforcing the map prices.
>
> Q Okay. Did Amazon make any specific demand that if you are not going to do it, then they are going to take certain actions against you?
>
> A They indicated that their buys would be a lot lower. That is the action they would take.
>
> Q Okay. And you agreed to enforce your map in order to ensure that the buys do not go lower?
>
> A Yes. And actually, the sales department is responsible for enforcing the map.
>
> . . .
>
> Q: . . . it seems this is a question that Steve Downes is addressing to you asking whether he could give a promotion to OJ Commerce. Is that correct?
>
> A Yes. He is asking if we should not give that discount because of the issues we were having with Amazon.
>
> Q So, in other words, was he saying he is afraid that if you are going to give a discount to OJ Commerce, you are going to get into trouble with Amazon?
>
> A Correct.

[DE 62–3]. In conjunction with this deposition excerpt, Plaintiff provides emails from February, March, and April of 2020. [DE 62–4] [DE 62–5], [DE 62–6]. Exhibits D and E are an email chain with emails from February 2020 through March 2020. In the first email on February 26, 2020, Steve Downs, an officer of NCP, LLC, asks Defendant Richard Puleo whether, "[b]ased on our discussion about Amazon pricing last week," NCP, LLC should "back off on promotions we do with OJ Commerce." [DE 62–4]. In response, Richard Puleo writes, on the same day, "I think so. What do you think, Joe and Sal?" [DE 62–4]. Joe adds, "I would say yes." *Id.* Sal responds, "[y]es

and maybe other customers too." [DE 62–5]. In a later email in the same chain, dated March 17, 2020, after OJ Commerce asked for a discount on NCP, LLC's products, Richard Puleo stated that OJC could have a 10% discount only for "items that Amazon didn't sell many of and are not on Amazon's" order for the following season. [DE 62–4]. DE 62–6 is an email dated April 7, 2020 from OrcaPacific, an agent from Amazon, in which a representative notifies NPC "which items need to be turned off and which seller/retailer is in violation." [DE 62–6]. In the email, OrcaPacific singled out OJC to Defendants for punishment, stating that "OJ Commerce had an additional 168 violations." *Id.*

Plaintiff states that it learned of Defendants' alleged agreements with Amazon in September and October of 2023 during discovery in the First Action. *See* SAC ¶ 59. Plaintiff accordingly brings the following counts: Count I: Section One of the Sherman Act. 15 U.S.C. § 1; Count II: New Jersey Antitrust Act N.J.S.A. § 56:9; Count III: Florida Antitrust Act § 542.18; Count IV: California Cartwright Act § 16700; Count V: Maryland Antitrust Act § 11-201; Count VI: Breach of Implied Covenant of Good Faith and Fair Dealing.

### III. STANDARD OF REVIEW

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

(citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

The court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

## IV.   DISCUSSION

By their instant Motion, Defendants seek dismissal of each of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b). Defendants argue the following. First, this Court lacks personal jurisdiction over Individual Defendants, Intermediary and Holding. Second, that Plaintiff fails to plausibly state a Section One claim; Third, that Plaintiff's implied covenant of good faith and fair dealing claim should be dismissed for failure to state a claim. Fourth, that Plaintiff's state claims should also be dismissed. The Court addresses each argument in turn and ultimately agrees with Defendants that the Second Amended Complaint should be dismissed in its entirety.

### A.  *Personal Jurisdiction*

First, Defendants argue that Plaintiff lacks personal jurisdiction over Intermediary, Holding, and the Individual Defendants. The Court agrees.

The determination of personal jurisdiction by a federal district court seated in Florida over a nonresident defendant requires a two-part analysis. *Abramson v. Walt Disney Co*., 132 Fed. Appx. 273, 275 (11th Cir. 2005). First the court must determine whether the Florida long-arm

statute provides a basis for personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). As to the Sherman Act specifically, because the Sherman Act does not have a nationwide service-of-process provision, a court must look to the state long-arm statute as a basis for exercising jurisdiction. *See Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014). If step one is met, the Court must then determine "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Sculptchair, Inc.*, 94 F.3d at 626 (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996)).

> The relevant portion of Florida's long-arm statute states:
>
> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> 2. Committing a tortious act within this state.

Fla. Stat. § 48.193(1). As an initial matter, Plaintiff concedes none of the Defendants are residents of Florida and does not allege that Defendants are subject to general jurisdiction in Florida. *See* SAC ¶¶ 1–9. Instead, Plaintiff asserts this Court has specific jurisdiction over all Defendants under Florida's long-arm statute. Plaintiff alleges:

> As part of its business relationship with NCP LLC, NTI LLC also participated in and benefited from the transaction business within this District resulting from the selling products including artificial Christmas tree products throughout this District, and in the State of Florida. SAC ¶ 24.

9

As part of its business relationship with NCP LLC, NTH LLC also participated in and benefited from the transaction of business within this District resulting from the selling products including artificial Christmas tree products throughout this District, and in the State of Florida. *Id.* ¶ 25.

As part of their corporate roles at NCP LLC, NTI LLC, and NTH LLC, Salvatore Puleo Jr., Joseph Puleo, and Richard Puleo each participated in and benefited from the transaction of business within this District resulting from the selling products including artificial Christmas tree products throughout this District, and in the State of Florida. *Id.* ¶ 26.

Salvatore Puleo Jr., Joseph Puleo, and Richard Puleo each individually committed anticompetitive conduct, as described herein, that injured OJC and its customers in the State of Florida. *Id.* ¶ 27.

Defendants engaged in conduct that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States, including in this District. *Id.* ¶ 29.

Defendants also committed a tortious act in Florida, by targeting telephonic, electronic, or written communications to OJC in Florida, in furtherance of the implementation of its anticompetitive conduct, which is further described below. *Id.* ¶ 30.

Defendants then enforced the Amazon's MMA and product restraint agreements through a series of telephonic, electronic, and written communications to OJC in Florida. *Id.* ¶ 67.

In these communications with OJC Defendants repeatedly enforced its Amazon's MMA and product restraint agreements, by refusing to provide discounts, refusing to sell restraint products, and demanding that OJC abide by its minimum pricing policies. *Id.* ¶ 68.

Richard Puleo, Salvatore Puleo, and Joseph Puleo all individually participated in, agreed to, and actively enforced the MMA and product restraint agreements between Defendants and Amazon. SAC ¶ 69.

Plaintiff has failed to make out a prima facie case of jurisdiction. Even if this Court found it has jurisdiction over NCP, LLC because NCP, LLC transacted business or committed a tort in Florida,[5] such a finding would not extend to the Individual Defendants, Intermediary and Holding.

As to the Individual Defendants, under Florida's long-arm statute, "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Doe v. Thompson,* 620 So.2d 1004, 1006 (Fla.1993)); *see also Villarino v. Joekel*, No. 0:23-CV-61003-KMM, 2024 WL 1633619, at *3 (S.D. Fla. Mar. 29, 2024) (conduct of corporate officers taken in their corporate capacity cannot subject non-residents to personal jurisdiction as a matter of law). Plaintiff does not plausibly delineate the actions of the Individual Defendants actions from their roles in their corporate capacities as officers at NCP, LLC. Indeed, Plaintiff repeatedly alleges the Individual Defendants acted "*as part of* their corporate roles with NCP, LLC." SAC ¶¶ 24–26 (emphasis added). Plaintiff's conclusory allegations that Joe, Sal, and Rich "individually committed anticompetitive conduct" and "caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects" in Florida do not alter this conclusion.

Nor, too, does Plaintiff plausibly delineate the actions of Intermediary and Holding from that of NCP, LLC. Jurisdiction over a parent corporation does not automatically establish jurisdiction over a wholly owned subsidiary, and vice versa. *See Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 n.13 (1984). Personal jurisdiction must be established based on "[e]ach defendant's contacts with the forum State," and those contacts "must be assessed individually."

---

[5] While Plaintiff spends much time in its SAC and Response arguing why this Court can exercise personal jurisdiction over NCP, LLC, Defendants do not challenge this Court's exercise of personal jurisdiction over NCP, LLC.

*Id.* Plaintiff repeatedly alleges that Intermediary and Holding acted "[a]s part of its business relationship with NCP LLC." At the same time, the SAC lumps all defendants together into a single cohesive actor. *See, e.g.*, SAC ¶ 50 ("Defendants were the dominant manufacturer."). These generalized allegations are insufficient to plausibly allege that Intermediary and Holding, *themselves* manufactured and distributed artificial Christmas trees nationwide or otherwise subjected themselves to personal jurisdiction in Florida under Florida's long-arm statute.

To the extent Plaintiff *does* state a prima facie case of personal jurisdiction against Individual Defendants, Intermediary, and Holding, Defendant has produced affidavits to sufficiently rebut this claim.[6] For one, the affidavits rebut the assertion that Individual Defendants, Intermediary and Holding were "carrying on business" in Florida under Fla. Stat. § 48.193(1)(a)(1). "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quotation omitted). Factors to consider include: the presence and operation of an office in Florida; the possession and maintenance of a license to do business in Florida; the number of Florida clients served; and the percentage of overall revenue obtained from those clients. *Id.* For this provision to apply, there must be a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the business activity. *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994).

---

[6] A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009). When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990) (internal quotation marks omitted); *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

The affidavits of Richard Puleo [68–3], and Salvatore Puleo, Jr. [68–4] both state as follows:

1. I am an individual residing in New Jersey.

2. I am a defendant in the above-captioned matter.

3. I am an officer of National Christmas Products, LLC.

4. I do not have or maintain a license to do business in Florida in my individual capacity.

5. I do not have or maintain an office in Florida in my individual capacity.

6. I do not have or maintain a bank account in Florida in my individual capacity.

The affidavit of Joseph A. Puleo [DE 68–2] also states the above, but adds the following:

1. I am an officer of National Tree Intermediary, LLC ("Intermediary").

2. Intermediary is a Delaware limited liability company.

3. Intermediary does not have any offices warehouses, distribution centers, or manufacturing facilities in Florida.

4. Intermediary does not have any employees or agents in Florida.

5. Intermediate does not have a license to do business in Florida.

6. Intermediary does not have a registered agent for service of process in Florida.

7. Intermediary does not own, rent or lease property in Florida.

8. I am an officer of National Tree Holding, LLC ("Holding").

9. Holding is a Delaware limited liability company.

10. Holding does not have any offices warehouses, distribution centers, or manufacturing facilities in Florida.

11. Holding does not have any employees or agents in Florida.

12. Holding does not have a license to do business in Florida.

    13. Holding does not have a registered agent for service of process in Florida.

    14. Holding does not own, rent or lease property in Florida.

*See* [DE 68–2]. Plaintiff does not make any attempt to rebut these assertions. Nor does Plaintiff point to additional factors not mentioned, such as the number of Florida clients Individual Defendants, Intermediary, and Holding served, and the percentage of overall revenue obtained from those clients. The Court finds the allegations in the affidavits suffice to show that neither Individual Defendants, nor Intermediary, nor Holding subjected themselves to personal jurisdiction in Florida under Fla. Stat. § 48.193(1)(a)(1).

    As to Plaintiff's allegations that personal jurisdiction exists through the tort provision of Florida's long-arm statute, this allegation also fails. Alleged violations of the federal and Florida antitrust laws probably[7] qualify as "tortious behavior" within the meaning of the Florida long-arm statute. *See Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988). For personal jurisdiction to attach under the "tortious activity" provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant "committed a substantial aspect of the alleged tort in Florida." *Watts v. Haun,* 393 So.2d 54, 56 (Fla. 2d DCA 1981). Such a showing is properly made by establishing that the activities in Florida "w[ere] essential to the success of the tort." *Id.* Here, any allegations that Individual Defendants, Intermediary, or Holding committed a tortious act in Florida is entirely conclusory and unsupported by facts. For example, while Plaintiff

---

[7] There appears to be conflicting case law on this issue. *Compare Courboin v. Scott*, 596 F. App'x 729, 734 (11th Cir. 2014) ("Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a) 6.") (citing *Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.,* 511 So.2d 992, 994 (Fla. 1987)) *with Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.,* 752 So. 2d 582, 586 (Fla. 2000) (allegations under the Florida Deceptive and Unfair Trade Practices Act that defendant had "deliberately conspired to fix the wholesale price of their product throughout the United States, including Florida" sufficed to allege a tort under Florida's long-arm statute); *see also Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) ("committing a tortious act in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida," as long as the cause of action arises from the communications).

alleges "Defendants also committed a tortious act in Florida, by targeting telephonic, electronic, or written communications to OJC in Florida, in furtherance of the implementation of its anticompetitive conduct" SAC ¶ 30, the SAC is devoid of any reference to specific communications made by Individual Defendants in their personal capacity, or by Intermediary or Holding, that would permit a finding that those Defendants committed a tortious act in Florida.

Ultimately, the Florida long-arm statute "must be strictly construed." *Keston v. FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1352 n.2 (S.D. Fla. 2007) (citations omitted). A court must resolve "any doubts about applicability of the statute [] in favor of the defendant and against a conclusion that personal jurisdiction exists," *Id.* Accordingly, and for the reasons above, the Court finds it lacks personal jurisdiction over Intermediary, Holding, and Individual Defendants.

B.  The Sherman Act § 1

Additionally, Defendants argue Plaintiff fails to state a claim under Section One of the Sherman Act. The Court agrees.

The Sherman Act § 1 provides, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The Supreme Court has interpreted the statute to prohibit only agreements that "unreasonably" restrain trade. *See, e.g.*, *Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 343 (1982). Therefore, the Statute prohibits "(1) conspiracies that (2) unreasonably (3) retrain interstate or foreign trade." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (citing *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1071 (11th Cir. 2004)).

In a Section One action, "[t]he crucial question" is whether the challenged anticompetitive conduct "stem[s] from independent decision or from an agreement, tacit or express." *Twombly*,

550 U.S. at 556. In other words, "a plaintiff must demonstrate a unity of purpose or common design and understanding, or a meeting of minds in an unlawful arrangement." *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1573 (11th Cir. 1991) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)). To survive a motion to dismiss, a party alleging a Section One violation must provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.

While some types of agreements have been found *per se* unreasonable, most are subject to the Rule of Reason. *See Seagood*, 924 F.2d at 1567 ("The presumption in cases brought under section 1 of the Sherman Act is that the rule-of-reason standard applies."). Under *Leegin*, vertical agreements are subject to a Rule of Reason analysis. *See Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 907 (2007). In turn, the Rule of Reason requires proof of "(1) the anticompetitive effect of the defendant's conduct on the relevant market, and (2) that the defendant's conduct has no pro-competitive benefit or justification." *Spanish Broad. Sys. of Fla., Inc.*, 376 F.3d at 1071 (quoting *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996)). When examining the effects of the alleged restraint, courts consider the circumstances surrounding the restraint, including "the facts peculiar to the business and the history of, reasons for, and market impact of the restraint. . ." *Royal Drug Co. v. Group Life & Health Ins. Co.,* 737 F.2d 1433, 1436 (5th Cir. 1984).

Because the Court finds it lacks jurisdiction over Intermediary, Holding, and the Individual Defendants, it addresses the antitrust claim only as to National Christmas Products, LLC.[8] Defendants argue Plaintiff has not alleged that any supposed agreement created an unreasonable

---

[8] Defendants also argue the antitrust claims fail as against Individual Defendants, Holding, and Intermediary. The Court need not address this argument as it finds the Court lacks personal jurisdiction over these Defendants.

restraint on trade. Specifically, Defendants argue Plaintiff fails to allege any actual effects or potential effects on competition in the market. The Court agrees.[9]

To allege potential harm to competition, a Plaintiff must first "define the relevant market" and then "establish that the defendants possessed power in that market." *Levine,* 72 F.3d at 1551. *See also PSKS, Inc. v. Leegin Creative Leather Prod., Inc.*, 615 F.3d 412, 419 (5th Cir. 2010). Plaintiff must then make "specific allegations linking market power to harm to competition in that market." *Spanish Broad. Sys.,* 376 F.3d at 1073. A reduction of output, increase in price, or deterioration in quality are all examples of actual effects on the market. *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339 (11th Cir. 2010). When alleging an intrabrand vertical restraint, Plaintiff must show the restraint reduced competition "marketwide." *OJ Com., LLC v. KidKraft, Inc.,* 34 F.4th 1232, 1246 (11th Cir. 2022). These requirements amount to a high threshold that Plaintiff does not meet.

Here, Plaintiff defines the market as "online sales in the artificial Christmas tree product category, within the geographic scope of the United States." SAC ¶ 37. Plaintiff alleges NCP, LLC has 50% share of that market; that Defendants' exercised their market power by engaging in anticompetitive activities, leading to an increased price for artificial Christmas trees "by double digits" based on Plaintiff's calculations, which are not disclosed; that "the top-selling artificial Christmas tree products throughout the Market increased by more than 15%."; that even as other consumer retail prices fell, the Market prices rose. *See* SAC ¶¶ 79–89.

The Court questions whether 50% market share is sufficient to allege market power for a Section One vertical price fixing scheme. *See e.g.*, *PayCargo, LLC v. CargoSprint, LLC*, No. 3:19-

---

[9] Defendants also argue in a single paragraph that Plaintiff has failed to allege an agreement with Amazon. Because the Court finds that Plaintiff does not state a Section One claim for the reasons outlined in this Order, the Court need not address this argument.

CV-85-TCB, 2019 WL 5793113, at *5 (N.D. Ga. Nov. 4, 2019) ("the Court rejects PayCargo's assertion that it plausibly alleges a dangerous probability of monopoly when it contends that Defendants have at least a fifty-percent market share of the relevant market."); *United States v. Empire Gas Corp.*, 537 F.2d 296, 305–07 (8th Cir. 1976), *cert. denied*, 429 U.S. 1122 (1977) (47–50% market share was insufficient to show a dangerous probability of attempted monopolization).

Assuming without deciding that 50% market share sufficiently alleges market power, "[a] mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme." *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1154 (9th Cir. 1997) (quotation omitted); *see also Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 97 (2d Cir. 1998) ("Market power, while necessary to show adverse effect indirectly, alone is insufficient."). Plaintiff must also plausibly allege defendant's actions had an anticompetitive effect on the market. *Spanish Broad. Sys. of Fla., Inc.*, 376 F.3d at 1071; *Jacobs*, 626 F.3d at 1339.

Here, Plaintiff alleges a 15% price increase in prices for top-selling products, and a "double-digit" price increase "marketwide." The 15% price increase can be disregarded as Plaintiff does not allege that such an increase *occurred in the defined market*—"online sales in the artificial Christmas tree product category, within the geographic scope of the United States"—but only within the "top selling" Christmas tree market. To the extent this figure should be considered, it is not at all clear that a 15% price increase in prices for top-selling products qualifies as a price increase "above competitive levels" which is fatal for a Section One claim. *Leonard v. Alabama State Bd. of Pharmacy*, 591 F. Supp. 3d 1155, 1169 (M.D. Ala. 2022), *aff'd*, 61 F.4th 902 (11th Cir. 2023). As for the claim that prices increased by "double digits" "market wide," Plaintiff's allegations lack numerical specificity or any explanation of how Plaintiff arrived at such figures.

Without more, the Court finds the Second Amended Complaint lacks "facts that are suggestive enough to render a § 1 conspiracy plausible" and is subject to dismissal. *Twombly*, 550 U.S. at 556, 127.

### C. State Law Claims

The state antitrust claims and implied covenant of good faith and fair dealing claim come before this Court under supplemental jurisdiction. Principles of comity and judicial economy suggest that a court may decline to address the pendent state law claims. *See* 28 U.S.C. § 1367(c)(3). Because the Court has found that Plaintiff does not state a claim under Section One of the Sherman Act, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### V. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss [DE 68] is hereby **GRANTED**.
2. The Second Amended Complaint [DE 62] is hereby **DISMISSED WITH PREJUDICE.**
3. The Clerk is **DIRECTED** to **CLOSE** this case and **DENY** any pending motions as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 24th day of April 2025.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:
Counsel of record